S93A1574. FREEMAN v. THE STATE.
(440 SE2d 181)

HUNT, Presiding Justice.

In this interim review in a death penalty case, appellant Ronald Freeman enumerates as error certain rulings by the trial judge. The principal issues on appeal involve the state's proposed use of similar transaction evidence, the constitutionality of OCGA § 17-10-16, providing for a sentence of life without parole, and the propriety of a change of venue. We affirm in part and reverse in part.

On June 25, 1992, Freeman and co-defendant Enrico Williams were indicted for a murder and armed robbery which occurred at a Burger King restaurant on Powers Ferry Road in Cobb County (Burger King I). Five months later, Williams, pursuant to a plea bargain, pleaded guilty to the armed robbery charge; the murder charge against him was placed on the dead docket in return for a statement and agreement to testify against Freeman. As a result of the statement made by Williams, five more indictments were returned against Freeman, charging him with: armed robbery of a Burger King restaurant on Cobb Parkway in Cobb County (Burger King II); murder and armed robbery at a Circle K convenience store on Six Flags Drive in Cobb County; murder and armed robbery at an RK convenience store on Franklin Road in Cobb County; armed robbery of a hotel; and three counts of aggravated assault. The state sought the death penalty on the Burger King I, Circle K and RK indictments.

In January 1993, Freeman was tried on the aggravated assault indictment and found guilty of all three counts; he was sentenced to sixty years in prison. In February 1993, Freeman was tried and found guilty of the armed robbery of a Burger King restaurant (Burger King II) and sentenced to life imprisonment consecutive to the 60-year aggravated assault sentence. In March 1993, the death penalty case in-

volving the murder and armed robbery at the RK convenience store was called for jury trial. At this trial, Freeman moved for a change of venue; the trial judge denied the motion but ordered a change of venue as to the two remaining untried death penalty cases (Circle K and Burger King I). Also, prior to jury selection the state, in compliance with Uniform Superior Court Rule 31.3 (b), filed its notice of intent to present evidence of similar transactions. The trial court ruled that the murder and armed robbery at the Circle K convenience store, the murder and armed robbery at the RK convenience store, the armed robbery at Burger King (Burger King II), and the murder and armed robbery at Burger King (Burger King I) were "relevant, probative and therefore admissible in the trial of each of" the other cases. In June a jury found Freeman guilty of the murder and armed robbery at the RK convenience store; the jury declined the death penalty, imposing a sentence of life imprisonment on the murder conviction.

Pre-trial proceedings in the instant case involving the murder and armed robbery at the Circle K convenience store began in July 1993, and pursuant to OCGA § 17-10-35.1, the trial judge certified various issues for interim review in this death penalty case.

1. Freeman enumerates as error the trial court's order allowing the State to present evidence of his convictions for the armed robbery of the Burger King (Burger King II) and the armed robbery and murder at the RK convenience store, and of the pending indictment for murder and armed robbery at Burger King (Burger King I). While unconnected crimes are generally inadmissible because of prejudice tending to place the defendant's character into evidence, the State may introduce such evidence provided that it satisfies two conditions. *Davis v. State*, 249 Ga. 309, 311 (290 SE2d 273) (1982). First, there must be evidence that the defendant did in fact commit the independent crime; second, there must be sufficient similarity between the independent crime and the crime charged such that proof of the former tends to prove the latter. Id. Once these two conditions have been satisfied, evidence of the independent crime may be admitted for the purpose of showing identity, motive, plan, scheme, bent of mind, and course of conduct. Id. In this case, both conditions are met as there was sufficient evidence that Freeman committed each of the independent crimes, and sufficient similarity between the independent crimes and the crime with which Freeman is charged.

2. Both Freeman and the State contend that OCGA § 17-10-16, the life-without-parole statute, is unconstitutional. We disagree.

(a) Section 7 of the act creating OCGA § 17-10-16 provides that the statute applies only to crimes committed after its effective date of May 1, 1993, unless the defendant requests in writing and the State gives its express written consent that the life-without-parole statute

apply. Freeman argues that the statute violates the equal protection clause of the Fourteenth Amendment because it places the discretion to withhold the presentation of a life-without-parole sentence in cases of crimes committed before May 1, 1993, in the hands of the prosecutor. This contention is without merit for the same reasons stated in *Knight v. State*, 243 Ga. 770 (257 SE2d 182) (1979).

> Prosecutorial discretion in this situation is no different from prosecutorial discretion in any other. Given any set of facts, prosecutors must exercise discretion as to what the criminal charge will be. Homicides could be indicted as murder, voluntary manslaughter, or involuntary manslaughter. By not seeking the death penalty in a murder case, a prosecutor in effect fixes the sentence — that is, life imprisonment. Therefore, since prosecutorial discretion comes into play under every criminal statute, it is not, of itself, grounds for striking a given statute down as unconstitutional. [Cit.]

243 Ga. at 771. We add that with respect to the application of the statute to crimes committed before May 1, 1993, the prosecutor cannot exercise discretion to seek a sentence of life without parole unless the defendant also seeks this remedy.

(b) The State argues that OCGA § 17-10-16 is unconstitutional and violative of Art. IV, Sec. II, Par. II; Art. IV, Sec. VII, Par. II, and Art. IV, Sec. II, Par. I because it imposes legislative restrictions on the power of the Board of Pardons and Paroles to grant parole and thus violates the separation of powers. This argument, too, is without merit.[1] "The power to create crimes and to prescribe punishment therefor is legislative." *Johnson v. State*, 169 Ga. 814, 817 (152 SE 76) (1929). The passage by the legislature of a statute providing for a sentence of life without parole, like the passage of legislation establishing the death penalty, does not impinge on the authority of the Board but, rather, renders the defendant ineligible for parole in the first instance.

3. In the case called for trial in March 1993, Freeman moved for a change in venue. The trial judge denied the motion but directed that venue would be changed in the two upcoming death penalty cases. Freeman argues that his motion for a change of venue was made only with respect to the case then on trial and that the trial judge acted improperly in changing the venue of the other two trials. We agree.

Under Georgia law, the superior court judge is authorized to change venue on his own motion only when "in his judgment, there is

---

[1] Freeman does not argue that the state has no standing to appeal this matter. We pretermit that issue, but see *State v. Hollomon*, 132 Ga. App. 304 (208 SE2d 167) (1974).

danger of violence being committed on the defendant." Such a determination is based on circumstances as they exist at the time of trial; a decision as to the danger of violence at trials at some future undetermined time is, in this case, a decision with an insubstantial basis. Accordingly, it was error for the trial judge to change the venue of the two cases not then before him.

4. Any enumerations of error not disposed of in Divisions 1 through 3 are without merit.

*Judgment affirmed in part and reversed in part. All the Justices concur.*

FLETCHER, Justice, concurring.

In *Williams v. State*, 261 Ga. 640 (409 SE2d 649) (1991), we held that in order for the state to introduce independent act evidence it must make three affirmative showings to the court in a Rule 31.3 (B) hearing with regard to each independent act or offense it wished to introduce at trial. I write solely for the purpose of making it clear that the state made all three of these affirmative showings, and, because of such showings, we affirm the trial court's order in Division 1.

First, the state must show that it intends to introduce the evidence for an appropriate purpose which has been deemed to be an exception to the general rule of inadmissibility and not for the purpose of raising an improper inference with regard to the accused's character. Second, the state must show sufficient evidence to establish that the accused committed the independent act. Third, the state must show there is a sufficient connection or similarity between the independent act and the crime charged such that proof of the former tends to prove the latter. The state must show "that *each* of these three showings has been satisfactorily made" as to each independent act it wishes to introduce into evidence. (Emphasis supplied.) *Williams*, 261 Ga. at 642.

The state presents these independent acts for the proper purpose of showing identity, course of conduct and scheme. As the majority noted, at the Rule 31.3 (B) hearing, the state made a sufficient showing that the accused committed the independent acts and that there was a sufficient similarity between the acts and the crime charged such that proof of the former tended to prove the latter. Since the state has made the three affirmative showings required under *Williams*, I would affirm.

DECIDED FEBRUARY 28, 1994 —
RECONSIDERATION DENIED MARCH 18, 1994.

*Jimmy D. Berry, Marc D. Cella,* for appellant.

*Thomas J. Charron, District Attorney, Frank R. Cox, Russell J. Parker, Debra H. Bernes, Nancy I. Jordan, Assistant District Attorneys, Michael J. Bowers, Attorney General, Paige M. Reese, Staff Attorney,* for appellee.