S12A1643, S12X1644, S12A1645. FERGUSON v. PERRY;
and vice versa.
(740 SE2d 598)

NAHMIAS, Justice.

Pam Ferguson, Judge of the Clayton County Probate Court, appeals from two orders of the trial court, the Superior Court of Clayton County. Case No. S12A1643 is Ferguson's appeal of the trial court's ruling that Manuel Perry is entitled to a Georgia weapons carry license ("WCL") pursuant to OCGA § 16-11-129, and Case No. S12A1645 is her appeal of the trial court's subsequent order issuing a writ of mandamus requiring Ferguson to issue a WCL to Perry. Because the trial court correctly ruled that Perry is entitled to a WCL, we affirm both of these cases. In Case No. S12X1644, Perry cross-appeals from the trial court's ruling that his right to keep and bear arms under the Georgia and United States Constitutions was not violated by the denial of his WCL application. We vacate that ruling, because once the trial court determined, correctly, that Perry is entitled to a WCL under OCGA § 16-11-129, his claim that the denial of a WCL violates his right to keep and bear arms loses its premise, and the trial court should not have opined on that moot issue.

1. In 1971, Manuel Perry was convicted of felony moonshining — violation of the federal liquor tax laws — in the United States District Court for the Middle District of Georgia. He received a two-year sentence. In 1978, the United States Treasury Department, through its Bureau of Alcohol, Tobacco, and Firearms ("ATF"), granted Perry relief from his federal firearms disabilities pursuant to 18 USC § 925 (c), while advising him that this action "does not relieve you from any firearms disabilities to which you may now or hereafter be subject by reason of any State laws or local ordinances."

Perry then turned to the Georgia Board of Pardons and Paroles (the "Board") for further relief. On June 25, 1979, after reviewing Perry's application, the Board issued Perry an "Order of Restoration of Civil and Political Rights Commutation." Finding "from proof satisfactory to this Board that [Perry] has been fully rehabilitated and is now a law abiding individual," and relying on "the constitutional . . . authority vested in this Board to remove disabilities

imposed by law," the Board ordered that "all disabilities resulting from [Perry's] sentence(s) be . . . removed" and "all civil and political rights lost as a result of [his] offense(s) be . . . restored."

Thirty years later, in February 2009, Perry applied for a WCL in the probate court of his county of residence, Clayton County. See OCGA § 16-11-129 (a). At that time, former OCGA § 16-11-129 (b) (3) provided, in relevant part, that no WCL shall be issued to:

> Any person who has been convicted of a felony by a court of this state or any other state; by a court of the United States including its territories, possessions, and dominions; or by a court of any foreign nation and has not been pardoned for such felony by the President of the United States, the State Board of Pardons and Paroles, or the person or agency empowered to grant pardons under the constitution or laws of such state or nation . . . .[1]

In addition, when Perry applied for his WCL, OCGA § 16-11-131 (b) made it a crime for a convicted felon to possess a firearm, but subsection (c) of that statute provided that this prohibition

> shall not apply to any person who has been pardoned for the felony by the President of the United States, the State Board of Pardons and Paroles, or the person or agency empowered to grant pardons under the constitutions or laws of the several states or of a foreign nation and, by the terms of the pardon, has expressly been authorized to receive, possess, or transport a firearm.[2]

---

[1] The statute has since been amended and the same language is now found in OCGA § 16-11-129 (b) (2) (B). In the remainder of this opinion, we will refer to the relevant portion of the WCL statute simply as OCGA § 16-11-129.

[2] Subsection (d) provided another means by which a convicted felon could possess firearms without violating OCGA § 16-11-131 (b):

> A person who has been convicted of a felony, but who has been granted relief from the disabilities imposed by the laws of the United States with respect to the acquisition, receipt, transfer, shipment, or possession of firearms by the secretary of the United States Department of the Treasury pursuant to 18 U.S.C. Section 925, shall, upon presenting to the Board of Public Safety proof that the relief has been granted and it being established from proof submitted by the applicant to the satisfaction of the Board of Public Safety that the circumstances regarding the conviction and the applicant's record and reputation are such that the acquisition, receipt, transfer, shipment, or possession of firearms by the person would not present a threat to the safety of the citizens of Georgia and that the granting of the relief sought would not be contrary to the public interest, be granted relief from the disabilities imposed by this Code section.

The relevant provisions of OCGA § 16-11-131 are the same now as they were in 2009.

On October 8, 2009, the probate judge, Pam Ferguson, denied Perry's WCL application, saying that his 1979 "pardon" did not restore his right to possess a firearm in Georgia lost as a result of his 1971 felony conviction.

Perry then brought this action for declaratory and mandamus relief in the trial court, contending that he had met all the requirements for a WCL and that Ferguson had no discretion to deny his WCL application. He also claimed that denying him a WCL violated his constitutional rights under the Second Amendment to the United States Constitution and Article I, Section I, Paragraph VIII of the 1983 Georgia Constitution.[3]

On April 5, 2012, the trial court granted partial summary judgment to Perry, declaring that he was eligible to receive a WCL because the legal disability imposed on him by OCGA § 16-11-129 had been removed by the Board's 1979 order. The court noted that a mandamus order compelling Ferguson to issue Perry a WCL would follow. The April 5 order also denied Perry's "request for a declaration that [Ferguson] violated [Perry's] right to bear arms," holding that the denial of Perry's WCL application did not prevent him from "bearing arms otherwise in conformity with the law." On April 26, 2012, the trial court issued a writ of mandamus ordering Ferguson to issue a WCL to Perry. Ferguson filed separate appeals of the April 5 and April 26 orders (Case Nos. S12A1643 and S12A1645), and Perry filed a cross-appeal from the part of the April 5 order that denied his constitutional claim (Case No. S12X1644).

## Case Nos. S12A1643 and S12A1645

2. Ferguson contends that the trial court erred in ruling that Perry was entitled to a WCL based on the Board's 1979 order. This contention is meritless.

(a) Ferguson first points out that Perry has not regained his right to possess firearms through either of the statutory avenues of relief created by the General Assembly. As mentioned previously, OCGA § 16-11-131 (c) provides that the criminal prohibition against possession of firearms by a convicted felon set forth in OCGA § 16-11-131 (b) does not apply to a felon who has been pardoned by the federal, state, or foreign authority empowered to grant a pardon for his conviction,

---

[3] The Second Amendment reads, "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." Paragraph VIII of the Georgia Bill of Rights provides, "The right of the people to keep and bear arms shall not be infringed, but the General Assembly shall have power to prescribe the manner in which arms may be borne."

but only where the terms of the pardon expressly authorize him to possess firearms; and OCGA § 16-11-131 (d) grants the Georgia Board of Public Safety the discretion to grant relief from the disabilities imposed by OCGA § 16-11-131 to a person convicted of a felony to whom the federal government has granted relief from federal firearms disabilities. Ferguson is right that the Board's 1979 order could not "pardon" Perry's federal conviction and did not expressly authorize him to possess firearms again, and although the ATF granted Perry relief from disabilities imposed by federal firearms laws in 1978, the record gives no indication that he ever sought relief from the Board of Public Safety.

However, these statutory routes to relief are not the exclusive means by which a convicted felon may regain the right to possess firearms (and obtain a WCL) under Georgia law. Our Constitution provides another way in which a convicted criminal's lost right to keep and bear arms may be restored, and the disabilities imposed by state firearms laws removed: a decision doing so from the Georgia Board of Pardons and Paroles, like the one Perry received in 1979. At that time, the 1976 Georgia Constitution said that the Board "shall have power to grant reprieves, pardons, and paroles, to commute penalties, *remove disabilities imposed by law*, and may remit any part of a sentence for any offense against the State, after conviction," with only two narrow exceptions not applicable to Perry. Ga. Const. of 1976, Art. IV, Sec. II, Par. I (emphasis added). Moreover, the Board's authority could not be restricted by statute, as the Constitution expressly precluded the General Assembly from enacting laws "inconsistent with[ ] this Paragraph." Id. Our current Constitution grants the Board the same broad authority, with some additional exceptions not applicable to Perry, see Ga. Const. of 1983, Art. IV, Sec. II, Par. II (a), and the General Assembly still may not enact statutes that limit the Board's powers, see Art. IV, Sec. VII, Par. II (providing that the "powers and duties of members of constitutional boards and commissions provided for in this article, *except the Board of Pardons and Paroles*, shall be as provided by law" (emphasis added)).

Ferguson cites *Freeman v. State*, 264 Ga. 27 (440 SE2d 181) (1994), for the proposition that the Board cannot take action that impairs the legislature's power to create crimes and impose punishment therefor. See id. at 29. That may be.[4] But the question in

---

[4] We note that the scope and vitality of *Freeman*'s holding are uncertain. *Freeman* involved a new statute, OCGA § 17-10-16, which took effect on May 1, 1993, and authorized a sentence of life without parole for persons convicted of an offense for which the death penalty may be imposed. See *Freeman*, 264 Ga. at 28; Ga. L. 1993, pp. 1654, 1656. Although *Freeman* indicates that the General Assembly may enact specific criminal sentences that the Board cannot later

*Freeman* was the Board's potential authority to grant parole for crimes as to which the General Assembly had enacted a sentence of life without parole. The question here, by contrast, is the Board's authority to remove disabilities imposed and restore civil and political rights lost as a collateral consequence of a criminal conviction, which affects neither the underlying offense nor its punishment. The Board's 1979 order restoring all of Perry's civil and political rights and removing all disabilities imposed on him by law did not alter Perry's crime (a federal offense which the State Board obviously could not change) or the punishment imposed for that crime (and indeed, Perry completed his full two-year sentence several years before the Board's order).

In short, while the General Assembly had the authority to enact OCGA § 16-11-131 (c) and (d) as *additional* means by which convicted felons may obtain relief from State laws prohibiting them from possessing firearms, the Constitution would not authorize the General Assembly to preclude the Board's power to grant similar relief, and we will not presume that our legislature meant to achieve such an unconstitutional result. Perry sought and obtained his relief not under OCGA § 16-11-131 but instead through the constitutionally provided alternative of an order of the Georgia Board of Pardons and Paroles.[5]

(b) Ferguson next asserts that the Board's order relieved Perry of legal disabilities arising only from his "sentence" and restored civil

---

reduce, that is contrary to the constitutional text, which the opinion did not discuss in its one short paragraph addressing this issue. Moreover, just months after the *Freeman* decision, the General Assembly proposed a constitutional amendment giving the legislature the express authority, for certain types of crimes and recidivist offenders, to enact "mandatory minimum" sentences and prohibiting the Board from granting a pardon, parole, or commutation in such cases. See Ga. L. 1994, pp. 2015, 2016. The amendment included sentences of life without parole for persons convicted of murder and persons convicted for a second time of seven serious felonies. See id. The proposed amendment was approved by the people of Georgia and is now Article IV, Section II, Paragraph II (b) of the Georgia Constitution of 1983. Notably, paragraph (b) (4) provides that "[a]ny general law previously enacted by the General Assembly providing for life without parole or for mandatory service of sentences without suspension, probation, or parole is hereby ratified and approved but such provisions shall be subject to amendment or repeal by general law." Because the Board's order in this case does not conflict with the holding in *Freeman*, however, we need not decide now whether *Freeman* remains good law.

[5] We recognize that several Attorney General opinions issued after the enactment of OCGA § 16-11-131 in 1980 have addressed specific questions regarding the interaction between Board orders, OCGA §§ 16-11-131 and 16-11-129. See, e.g., 1980 Ga. Op. Atty. Gen. 257 (No. 80-122); 1980 Ga. Op. Atty. Gen. 435 (No. U80-32); Ga. Op. Atty. Gen. No. 05-3 (No. U2005-3). None of these opinions, however, address the effect of a Board order issued before 1980 that restored "all" of the convicted felon's civil and political rights and removed "all" of his state-law disabilities, nor do any of the opinions mention the Board's constitutional authority, much less discuss whether the General Assembly may limit that authority by statute (something which, as discussed above, the 1976 and current Constitutions both expressly preclude). We therefore do not find the Attorney General opinions persuasive on the issues presented here.

and political rights lost only due to his "offense," without referring to his felony moonshining "conviction," which is the source of Perry's state firearms disabilities under OCGA §§ 16-11-129 and 16-11-131 (c). While the Board's language was inartful, Ferguson's reading of the Board's order is untenable.

As her only example of a legal disability allegedly arising from a "sentence" for which the Board supposedly meant to remove Perry's disability, Ferguson points to OCGA § 21-2-216 (b), which says (with emphasis added) that "no person who has been convicted of a felony involving moral turpitude may register, remain registered, or vote *except upon completion of the sentence.*" Accord Ga. Const. of 1983, Art. II, Sec. I, Par. III (a). However, under the Georgia Constitutions in effect when Perry was convicted in 1971 and when the Board issued its order to him in 1979, the voting disability was based solely on a person's *conviction* of a crime involving moral turpitude punishable by imprisonment, without reference to the length of his sentence. See Ga. Const. of 1976, Art. II, Sec. II, Par. I (providing that a person could not vote if he had "been convicted . . . of any crime involving moral turpitude, punishable by the laws of this State with imprisonment in the penitentiary, unless such person[ ] shall have been pardoned"); Ga. Const. of 1945, Art. II, Sec. II, Par. I (same). Moreover, even today, the voting disability imposed by OCGA § 21-2-216 (b) and the current Constitution is not *based* on a criminal sentence; it is a disability based on a criminal conviction with the *duration* of the disability measured by the resulting sentence. And furthermore, if Ferguson's view of the voting disability were correct, the Board's removal of Perry's disabilities was meaningless, because the two-year sentence he received in 1971 had expired long before the Board issued its order in 1979.[6]

Equally unpersuasive is Ferguson's assertion that the term "offense" used in the Board's order refers to certain felony "offenses" that carry their own unique disabilities and loss of rights, as opposed to the general legal disabilities and loss of civil and political rights that arise from any felony conviction. Ferguson does not contend that Perry's federal moonshining conviction carried any unusual legal

---

[6] We note one conviction-based legal disability, the duration of which was tied to the defendant's sentence, that did exist in 1979. Under former Code Ann. § 26-2904 (a) (3), a person convicted of a non-forcible felony was ineligible for a weapons carry license until he was free from any type of restraint or supervision in connection therewith for at least five years. (The period was ten years for those convicted of forcible felonies, and three years for certain other convictions.) Without such a license, a convicted felon could possess firearms only in his home or place of business. See former Code Ann. § 26-2901. However, Perry's sentence for his non-forcible moonshining conviction expired in 1973, so he was not subject to this disability by the time of the Board order in 1979.

disability or lost right. Again, Ferguson's reading of the Board's order would render it without any actual effect on Perry's legal rights.

We are loath to read an order issued by a constitutional board to be a meaningless piece of paper. See *United States v. Butler*, 297 U. S. 1, 65 (56 SC 312, 80 LE 477) (1936) ("These words cannot be meaningless, else they would not have been used."). It is more natural and reasonable to read the Board's 1979 order as removing "all disabilities resulting from" and "all civil and political rights lost as a result of" Perry's felony conviction.

(c) Ferguson then argues that the phrase "all civil and political rights" used in the Board's order refers to only three such rights: the rights to vote, to serve on a jury, and to hold public office. It is true that those were a litany of civil and political rights often said to be among those forfeited by felons. See, e.g., *Morton v. State*, 166 Ga. App. 170, 171 (303 SE2d 509) (1983) (explaining that a Board's order that restored civil and political rights "formally restor[ed] such civil and political rights as the right to vote, to hold public office and to sit on a jury"). But that is all that is true about Ferguson's argument.

The Board's order is not limited in scope: it speaks of restoring "all" of Perry's civil and political rights, as well as removing "all" disabilities imposed by law. It is no surprise that the Board's 1979 order did not expressly restore Perry's right to keep and bear arms and remove any disability to possess firearms imposed by Georgia law, because Perry's disability to obtain a WCL under former Code Ann. § 26-2904 (a) (3) had expired by 1978, see footnote 6 above, and Georgia did not have a law generally prohibiting convicted felons from possessing firearms until 1980. See Ga. L. 1980, p. 1509 (enacting what is now OCGA § 16-11-131 (b)).[7] In recent years, however, the Supreme Court of the United States has confirmed that the right to keep and bear arms is a fundamental constitutional right of American citizens that may not be infringed by either the federal or state governments. See *District of Columbia v. Heller*, 554 U. S. 570, 628 (128 SC 2783, 2818, 171 LE2d 637) (2008) (holding that the Second Amendment protects the right of individual citizens to keep and bear arms); *McDonald v. City of Chicago*, ___ U. S. ___, ___ (130 SC 3020, 3050, 177 LE2d 894) (2010) (holding that the Second Amendment applies to the States through the Fourteenth Amendment).[8]

---

[7] A federal law generally restricting the right of convicted felons to possess firearms was similarly not enacted until 1968. See Omnibus Crime Control and Safe Streets Act of 1968, Pub. L. No. 90-351, Ch. 44, 82 Stat. 228 (codified as amended at 18 USC § 922 (g) (1)).

[8] This case does not require us to explore the scope of the right to keep and bear arms or the extent to which it may be regulated. See also Division 3 below.

Thus, in more recent opinions, which Ferguson does not cite, this Court and other courts have said that the right to possess firearms is indeed a "civil right." See, e.g., *Smith v. State*, 287 Ga. 391, 398 (697 SE2d 177) (2010) (noting that a criminal conviction may impact the defendant's "civil rights, such as the right to vote or possess firearms"); *United States v. Stone*, 139 F3d 822, 831 (11th Cir. 1998) (explaining that felony convictions " 'carry disabilities' " including the deprivation of " 'civil rights as important as the right to vote, the right to keep and bear arms, and the right to engage in a chosen business or profession' " (quoting *United States v. Sharp*, 12 F3d 605, 608 (6th Cir. 1993)). Likewise, since firearm possession became a disability imposed by Georgia law on persons convicted of a felony, the Board has recognized that the right to keep and bear arms is a civil right by specifically excepting the right to possess a firearm when otherwise restoring civil and political rights in certain cases. See *In the Matter of Calhoun*, 286 Ga. 471, 471 (689 SE2d 311) (2010) (referring to a Board order issued in 2000); *In the Matter of Siegelman*, 285 Ga. 817, 817 (683 SE2d 595) (2009) (referring to a 1995 Board order); *White v. State*, 274 Ga. App. 805, 806 (619 SE2d 333) (2005) (quoting a 2000 Board order).

It is similarly clear that when a citizen is precluded by law from possessing firearms as a consequence of his felony conviction, he suffers a "disability imposed by law." See, e.g., The New Shorter Oxford English Dictionary 682 (1993) (defining "disability" to include an "[i]ncapacity . . . created by the law"). Thus, the Georgia statutes that prohibit convicted felons like Perry from possessing firearms and obtaining a WCL are disabilities imposed by state law. See OCGA §§ 16-11-129, 16-11-131 (b). Indeed, in OCGA § 16-11-131 the General Assembly described statutory prohibitions against possessing firearms in just these terms. See OCGA § 16-11-131 (d) (referring to the federal prohibitions against convicted felons possessing firearms as "disabilities imposed by the laws of the United States" and referring to the similar prohibitions in OCGA § 16-11-131 as "disabilities imposed by this Code section").

Accordingly, when in 1979 the Board restored "all" of Perry's civil rights and removed "all" disabilities imposed on him by Georgia law, it is apparent that he regained any right to keep and bear arms that he had lost as a result of his felony conviction, and he is not subject to the disabilities to obtain a WCL and possess firearms that otherwise would have applied to him under OCGA §§ 16-11-131 (b) and 16-11-129. In reaching this result, we note that, as just mentioned, since the enactment of OCGA § 16-11-131 in 1980, the Board appears to have adopted the practice of expressly specifying in its orders removing disabilities and restoring civil and political rights whether

or not the order restores the convicted offender's firearms rights. Indeed, the Board's current rules isolate firearms rights for particular treatment. See Ga. Comp. R. & Regs. r. 475-3-.10 (4). We view this practice as salutary, since it prevents disputes about the meaning of Board orders like the one in this case and generally aligns the exercise of the Board's constitutional authority with the routes to relief from firearms disabilities provided by statute. As a result, cases like Perry's should be rare and relate only to orders issued by the Board decades ago.

(d) For these reasons, we affirm the trial court's ruling that Perry was entitled to a WCL under OCGA § 16-11-129 and the court's mandamus order requiring Ferguson to issue a WCL to Perry.

### Case No. S12X1644

3. In his cross-appeal, Perry contends that the trial court erred in ruling that the denial of his application for a WCL did not violate his right to keep and bear arms under the federal and state constitutions because the denial did not prevent Perry from "bearing arms otherwise in conformity with the law." The premise of Perry's argument is that the State's denying a WCL to a convicted felon violates those constitutional rights. However, because the trial court ruled, correctly, that Perry is entitled to a WCL under OCGA § 16-11-129, that premise does not apply to him and his constitutional complaint is moot. Perry's own constitutional rights will not be denied for the reason he asserts, and he lacks standing to assert constitutional claims on behalf of other persons who may be denied a WCL because they are convicted felons whose rights, unlike his, have not been restored. See *Feminist Women's Health Center v. Burgess*, 282 Ga. 433, 434-435 (651 SE2d 36) (2007) (discussing the strict limits on third-party standing). Thus, the trial court should not have opined on the merit of Perry's constitutional claim under the assumption that he can properly be denied a WCL; having determined that Perry is entitled to a WCL, the court should have dismissed his constitutional claim as moot. We therefore vacate this portion of the trial court's April 5, 2012, order.

*Judgments affirmed in Case Nos. S12A1643 and S12A1645. Judgment vacated in Case No. S12X1644. All the Justices concur.*

DECIDED MARCH 25, 2013.

*Freeman, Mathis & Gary, Coleen D. Hosack, Jack R. Hancock*, for appellant.

*John R. Monroe*, for appellee.