**FIFTH DIVISION**
**DILLARD, P. J.,**
**REESE and BETHEL, JJ.**

**NOTICE: Motions for reconsideration must be**
***physically received* in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**March 10, 2017**

# In the Court of Appeals of Georgia

A16A1650. DAVIS v. THE STATE.

DILLARD, Presiding Judge.

This appeal concerns the breadth of the "power of executive clemency" exercised by the Georgia Board of Pardons and Paroles ("Board"), especially the power to grant pardons and remove disabilities imposed by law.[1] Specifically, we are called upon to determine whether the Board's "unconditional" pardon of Barry Davis's aggravated sodomy conviction obviates his duty to register as a convicted sex offender. Because the separation-of-powers doctrine requires us to adhere to the decision of the Board to issue Davis a pardon, and the plain meaning of the sweeping

---

[1] *See* Ga. Const. Art. IV, § II, ¶ II (a) ("Except as otherwise provided in this Paragraph, the State Board of Pardons and Paroles shall be vested with the power of executive clemency, including the powers to grant reprieves, pardons, and paroles; to commute penalties; to remove disabilities imposed by law; and to remit any part of a sentence for any offense against the state after conviction.").

language used by the Board in that pardon removes the duty of Davis to register as a sex offender, we are constrained to reverse the trial court's denial of Davis's motion for a general demurrer.

On August 21, 1995, Davis was convicted of the aggravated sodomy of his minor (six-year old) biological daughter after entering a non-negotiated guilty plea to that charge in the Superior Court of Chatham County, which resulted in a sentence of ten years with two to serve in confinement. Approximately one year after Davis's conviction, OCGA § 42-1-12 was enacted, which required him to register as a sex offender.[2] Following his release from prison, Davis served the remainder of his sentence on probation until it terminated on July 15, 2005.

At some point thereafter, Davis applied to the Board for a pardon, and on February 13, 2013, the Board granted his application. Specifically, the pardon provided:

---

[2] *See* former OCGA § 42-1-12 (b) (ii); Ga. L. 1996, p. 1520, § 1; *see also Frazier v. State*, 284 Ga. 638, 638 (668 SE2d 646) (2008) (noting that sex-offender-registration law first became effective on July 1, 1996, and, in pertinent part, requires registration by any individual who "[h]as previously been convicted of a criminal offense against a minor . . . and may be released from prison or placed on parole, supervised release, or probation on or after July 1, 1996. . . .").

Whereas, having investigated the facts material to the pardon application, which investigation has established to the satisfaction of the Board that [Davis] is a law-abiding citizen and is fully rehabilitated; THEREFORE, pursuant to Article IV, Section II, Paragraph II (a), of the Constitution of the State of Georgia, the Board, without implying innocence, hereby unconditionally pardons said individual, and it is hereby ORDERED that all disabilities under Georgia law resulting from the above stated conviction and sentence . . . are hereby removed; and ORDERED FURTHER that all civil and political rights, except the right to receive, possess, or transport in commerce a firearm . . . are hereby restored.

Approximately one month after receiving the pardon, Davis moved to North Carolina, but he did not provide notice to the Chatham County Sheriff's Office that he was doing so. When the sheriff's office informed Davis of this failure, Davis asserted that his pardon obviated the previous requirement for him to register as a sex offender. Nevertheless, the sheriff's office obtained a warrant for Davis's arrest, and on February 26, 2014, the State charged Davis, via indictment, with failing to register as a sex offender as required by OCGA § 42-1-12.

Subsequently, Davis filed a motion for a general demurrer, arguing that the indictment failed to charge an offense under Georgia law because, as he asserted previously, the requirement to register as a sex offender constituted a legal disability,

which the Board's pardon had removed. Shortly thereafter, the State filed a response, and a few months later, the trial court held a hearing on Davis's motion,[3] which concluded with the court taking the matter under advisement. Then, on January 14, 2016, the trial court denied Davis's motion for a general demurrer, specifically finding that the requirement that Davis register as a sex offender was not a legal disability and, therefore, was not removed by the pardon. Davis then filed an application for interlocutory review, which we granted. This appeal follows.[4]

---

[3] As the State notes in its brief, a separate issue was considered by the trial court at this hearing: whether Davis's file with the Board should be unsealed. The State maintained that the Board was fraudulent and negligent in its handling of Davis's pardon, and that access to Davis's pardon file would reveal that the Board never intended to remove him from the sex-offender registry. The Office of the Attorney General of Georgia entered a special appearance in the case, objecting to the motion to unseal Davis's pardon file with the Board. Specifically, the Attorney General argued that "a pardon decision is not subject to judicial review, so it doesn't matter what was said. It doesn't matter what [the Board] reviewed. It doesn't matter if there's fraud or . . . [an] allegation of incompetence, none of that matters." Ultimately, the trial court, citing state secrecy laws, declined to unseal Davis's pardon file with the Board.

[4] Because the effect of Davis's pardon on his duty to register as a sex offender presents an issue of first impression in Georgia, we invited the Office of the Attorney General of the State of Georgia and the Georgia Association of Criminal Defense Lawyers ("GACDL"), as well as other interested organizations, the opportunity to file *amicus curiae* briefs in this case. GACDL and The District Attorneys' Association of Georgia ("DAAG") both did so, and we express our sincere appreciation to both associations for their thoughtful and scholarly submissions.

4

At the outset, we note that an accused may challenge the sufficiency of an indictment by filing a general or special demurrer.[5] Specifically, a general demurrer, "challenges the sufficiency of the *substance* of the indictment, whereas a special demurrer challenges the sufficiency of the *form* of the indictment."[6] An indictment shall be deemed sufficiently technical and correct to withstand a general demurrer if it "states the offense in the terms and language of this Code or so plainly that the nature of the offense charged may easily be understood by the jury."[7] However, a demurrer to an indictment "does not reach matters not appearing on its face."[8] Indeed, a demurrer may "properly attack only defects which appear on the face of the indictment and a demurrer which seeks to add facts not so apparent but supply extrinsic matters must fail as a speaking demurrer."[9]

---

[5] *See State v. Corhen*, 306 Ga. App. 495, 496 (700 SE2d 912) (2010).

[6] *Id.* at 496-97 (punctuation omitted); *accord State v. Harlacher*, 336 Ga. App. 9, 10 (783 SE2d 411) (2016).

[7] OCGA § 17-7-54 (a); *see also Harlacher*, 336 Ga. App. at 10.

[8] *State v. Horsley*, 310 Ga. App. 324, 325 (2) (714 SE2d 1) (2011) (punctuation omitted).

[9] *Id.* (punctuation omitted).

5

In this matter, the indictment makes no reference to Davis's pardon. And in fact, Davis introduced the pardon as an exhibit during the hearing on his demurrer. Thus, Davis arguably challenged the indictment via a speaking demurrer. Nevertheless, the State did not object to the introduction of Davis's pardon during the hearing and likewise did not object generally to the method by which Davis challenged the indictment. Consequently, we find that the parties consented to the trial court's determination of whether Davis's pardon rendered insufficient the facts supporting the charge in the indictment, notwithstanding the general prohibition against speaking demurrers in criminal cases.[10] Indeed, essentially, Davis's challenge to the indictment could more accurately be characterized as a plea in bar, "which goes to bar the [S]tate's action; that is to defeat it absolutely and entirely."[11] Regardless,

---

[10] *See State v. Brannan*, 267 Ga. 315, 317 n.4 (477 SE2d 575) (1996) (holding that the parties consented to defendant's use of facts outside the indictment to challenge same, notwithstanding the general prohibition against speaking demurrers in criminal cases); *Schuman v. State*, 264 Ga. 526 (448 SE2d 694) (1994) (holding that as there is no statutory proscription against such procedure, the State was precluded from challenging procedure under which trial court dismissed indictment, even though such constituted a speaking demurrer by defendant given that State also presented evidence and made no objections to procedure).

[11] *State v. Land-O-Sun Dairies, Inc.*, 204 Ga. App. 485, 486 (419 SE2d 743) (1992) (punctuation omitted); *see Dominick v. Bowdoin*, 44 Ga. 357, 363 (1871 WL 2695) (1871) (noting that arguing that a pardon prevents prosecution should be treated as a plea in bar).

6

as is the case with a trial court's ruling on a general or special demurrer,[12] on appeal,

we review the trial court's application of the law to the undisputed facts in a plea in

bar *de novo*.[13] With these guiding principles in mind, we will now address Davis's

claim of error.[14]

Davis contends that the trial court erred in denying his motion for a general

demurrer, arguing that the requirement to register as a sex offender constitutes a legal

---

[12] *See Harlacher*, 336 Ga. App. at 10 (noting that "this Court reviews a trial court's ruling on a general or special demurrer de novo in order to determine "whether the allegations in the indictment are legally sufficient" (punctuation omitted)).

[13] *See State v. Garlepp*, 338 Ga. App. 788, 788 (790 SE2d 839) (2016) (noting that when the evidence is uncontroverted and witness credibility is not an issue, "our review of the trial court's application of the law to the undisputed facts regarding a plea in bar of double jeopardy is *de novo*).

[14] In its *amicus curiae* brief, GACDL argues that because Davis's challenge to the indictment is more properly characterized as a plea in bar, it was a directly appealable collateral order and Davis's application for interlocutory review was unnecessary. *See Patterson v. State*, 248 Ga. 875, (287 SE2d 7) (1982) (holding that denial of timely filed plea of double jeopardy is appealable without resort to interlocutory appeal procedures). *But see Sosniak v. State*, 292 Ga. 35, 40 (2) (734 SE2d 362) (2012) (holding that a defendant must follow the interlocutory appeal procedures when pursuing the appeal of the denial of a plea in bar based on an alleged violation of the constitutional right to a speedy trial). Nevertheless, because a review on the merits of Davis's appeal is properly before this Court, at this time, we need not address whether the denial of Davis's challenge was directly appealable.

7

disability, which the Board's pardon of him removed, and thus, he committed no offense under Georgia law. We agree.

As noted *supra*, the State charged Davis with failure to register as a sex offender in violation of OCGA § 42-1-12, specifically alleging that, having been convicted of aggravated sodomy, Davis was required to update the Sheriff of Chatham County regarding any change of residence within 72 hours prior to such change but that Davis moved from his Savannah residence without doing so. And indeed, OCGA § 42-1-12 (f) (5), in relevant part, provides that registered sex offenders shall

> [u]pdate the required registration information with the sheriff of the county in which the sexual offender resides within 72 hours of any change to the required registration information. . . . If the information is the sexual offender's new address, the sexual offender shall give the information regarding the sexual offender's new address to the sheriff of the county in which the sexual offender last registered within 72 hours prior to any change of address[.]

Here, Davis does not dispute that he moved without informing the sheriff but, rather, argues that the pardon he received from the Board obviated the previous requirement to register as a sex offender. Accordingly, we shift our focus to the Board's powers and the language of the pardon that it chose to grant Davis.

8

The Constitution of the State of Georgia provides that "[t]here shall be a State Board of Pardons and Paroles which shall consist of five members appointed by the Governor, subject to confirmation by the Senate."[15] And our Constitution further provides that the Board "shall be vested with the power of executive clemency, including the powers to grant reprieves, pardons, and paroles; to commute penalties; to remove disabilities imposed by law; and to remit any part of a sentence for any offense against the state after conviction."[16] Recognizing the importance of separation of powers and the Board's independence in order to effectively wield its clemency power, OCGA § 42-9-1 provides that

---

[15] Ga. Const. Art. IV, § II, ¶ I.

[16] Ga. Const. Art. IV, § II, ¶ II (a); *see* Ga. Comp. R. & Regs. r. 475-2-.01 (1) ("The Board shall have the power to grant reprieves, pardons and paroles, to commute penalties, remove disabilities imposed by law and may remit any part of sentence(s) for any offenses against the State, after conviction."); *see also Harrison v. Wiggington*, 269 Ga. 388, 389 (1) (497 SE2d 568) (1998) (recognizing that the Board's powers to pardon and its authority to remove disabilities are separate and distinct from one another); *Ex parte Wells*, 59 U.S. 307, 311 (18 How. 307, 151 LEd 421) (1855) (citing 3 Edward Coke, *Institutes of the Lawes of England* 233) (noting that a pardon may forgive "any crime, offence, punishment, execution, right, title, debt, or duty"); Joseph Story, 3 *Commentaries on the Constitution of the United States*, § 1494, 351-52 (1st ed. 1833) ("In point of fact, the power [to pardon] has always been found safe in the hands of state executives in treason, as well as other cases . . . .").

it is declared to be the policy of the General Assembly that the duties, powers, and functions of the State Board of Pardons and Paroles are executive in character and that, in the performance of its duties under this chapter, no other body is authorized to usurp or substitute its functions for the functions imposed by this chapter upon the board.

And indeed, recognizing that the Board's independence similarly prohibited interference from the courts, we have held that

[a]ny attempt by a court to impose its will over the Executive Branch by attempting to impose as a part of a criminal sentence conditions operating as a prerequisite of or becoming automatically effective in the event of a subsequent parole of defendant by the State Board of Pardons and Paroles would be a nullity and constitute an exercise of power granted exclusively to the Executive Branch.[17]

Given this constitutional mandate, our review in this matter does not—and cannot—concern the propriety of the pardon the Board granted Davis but rather only the scope of that pardon.

The relevant regulation defines a pardon as "a declaration of record that a person is relieved from the legal consequences of a particular conviction," which

---

[17] *Pate v. State*, 318 Ga. App. 526, 531 (3) (734 SE2d 255) (2012) (punctuation omitted); *see Stephens v. State*, 305 Ga. App. 339, 346-47 (5) (a) (699 SE2d 558) (2010) (holding that trial court's sentence purporting to impose restrictions on defendant's parole usurped an exclusive power of the Board and was, thus, a nullity).

"restores civil and political rights and removes all legal disabilities resulting from the conviction."[18] And here, the pardon that the Board granted Davis—after "having investigated the facts material to the pardon application"—declares that he has "established to the satisfaction of the Board" that he is "a law-abiding citizen and is fully rehabilitated." The pardon then, "without implying innocence" of Davis's conviction for aggravated sodomy, "unconditionally pardons" him of that conviction, and orders that "*all* disabilities under Georgia law resulting from the above stated conviction and sentence . . . are hereby removed; and . . . all civil and political rights, except the right to receive, possess, or transport in commerce a firearm . . . are hereby restored." Nevertheless, in denying Davis's motion for a general demurrer, the trial court found that the requirement that Davis register as sex offender was merely regulatory and did not constitute a disability under the law that could be removed by the pardon. But although the trial court is correct that "sexual offender registry requirements such as those contained in OCGA § 42-1-12 are regulatory, and not punitive, in nature[,]"[19] that does not end our inquiry unless one assumes that such

---

[18] *See* Ga. Comp. R. & Regs. r. 475-3-.10 (3).

[19] *Rainer v. State*, 286 Ga. 675, 675-76 (1) (690 SE2d 827) (2010); *see Smith v. Doe*, 538 U.S. 84, 93 (II) (A) (123 SCt 1140, 155 LE2d 164) (2003) (noting that restrictive post-incarceration measures on sex offenders is a legitimate nonpunitive

regulatory requirements cannot also constitute legal disabilities. We can make no such assumption here.

The term disability is defined, *inter alia*, as an "incapacity in the eye of the law, or created by law; a restriction framed to prevent any person or class of persons from sharing in duties or privileges which would otherwise be open to them; legal disqualification."[20] And in contrast to regulations such as requiring tavern owners to obtain operating licenses[21] or even weekend anglers to obtain fishing licenses,[22] "registration as a sex offender is intimately related to the criminal process in that it

---

governmental objective); *Rogers v. State*, 297 Ga. App. 655, 657 (678 SE2d 125) (2009) (noting that "[t]he designation of a person as a sexual offender is neither a sentence nor a punishment but simply a regulatory mechanism and status resulting from the conviction of certain crimes" (punctuation omitted).

[20] The Compact Oxford English Dictionary 440 (2d ed. 1991); *see* Black's Law Dictionary 474 (7th ed. 1999) (defining "disability" as, *inter alia,* an "[i]ncapacity in the eye of the law"); *id.* (defining "civil disability" as "[t]he condition of a person who has had a legal right or privilege revoked as a result of a criminal conviction . . . ."); *see also Ferguson v. Perry*, 292 Ga. 666, 673 (2) (c) (740 SE2d 598) (2013) (noting that The New Shorter Oxford English Dictionary 682 (1993) defines disability to include an incapacity created by law).

[21] *See* Ga. Comp. R. & Regs. r. 560-2-13-.01 (1).

[22] *See* Ga. Comp. R. & Regs. r. 391-4-3-.09.

12

is an automatic result following certain criminal convictions."[23] Under OCGA § 42-1-12 (e), "[r]egistration shall be required by any individual who is convicted of certain designated criminal offenses, and we have emphasized that Georgia law makes registration mandatory for specified categories of convicted criminals."[24] Thus, unlike the majority of regulations, "our law has enmeshed criminal convictions and sex offender registration such that it is most difficult to divorce the requirement of registration from the underlying criminal conviction."[25]

Indeed, comparing registration as a sex offender to deportation, this Court has held that it "is a drastic measure (albeit a totally understandable one) with severe ramifications for a convicted criminal."[26] A person who falls within the ambit of the sex-offender registry is "subject to lifetime registration and to the public dissemination of his name and other information identifying him as a registered sex offender."[27] A registrant must also provide—to the sheriff of the county in which the

---

[23] *Taylor v. State*, 304 Ga. App. 878, 883 (1) (698 SE2d 384) (2010) (punctuation omitted).

[24] *Id.* (punctuation omitted); *see* OCGA § 42-1-12 (e).

[25] *Taylor*, 304 Ga. App. at 883 (1) (punctuation omitted).

[26] *Id.* (punctuation omitted).

[27] *Id.* at 884 (1); *see* OCGA § 42-1-12 (f) (6).

13

registrant resides—a significant amount of personal information, including social-security number, finger prints, address, place of employment, address of employer, and vehicle make, model, and license tag number,[28] as well as updates to that information within 72 hours of any change.[29] And the failure of a registrant to "comply with the requirements of the statute constitutes a felony offense."[30] Given that the registration statute requires one to provide law enforcement with significant details as to where one lives, where one works, and where one travels, it strains credulity to characterize compulsory registration as a sex offender as merely regulatory but not as an "incapacity" in the eyes of the law. Indeed, the ability of an American citizen to live freely without reporting to the government his or her every movement is a defining characteristic of our constitutional republic.[31] In this case, the

[28] *See* OCGA § 42-1-12 (a) (16).

[29] *See* OCGA § 42-1-12 (f) (5).

[30] *Taylor*, 304 Ga. App. at 884 (1); *see* OCGA § 42-1-12 (n) (1) ("Any individual who: [i]s required under this Code section and who fails to comply with the requirements of this Code section . . . shall be guilty of a felony and shall be punished by imprisonment for not less than one nor more than 30 years. . . .").

[31] *See Kent v. Dulles*, 357 U.S. 116, 125-26 (78 SCt 1113, 2 LE2d 1204) (1958) (noting that the right to travel and freedom of movement is a "deeply engrained" constitutional and historical liberty interest enjoyed by Americans, and that "freedom of movement is basic in our scheme of values"); *Williams v. Fears*, 179 U.S. 270, 274

14

question before us is not whether Davis is deserving of such freedom (that has already been answered by the Board), but only whether the requirement that Davis register as sex offender constitutes a legal disability that the Board's pardon obviated, and we are constrained to conclude that it is a disability and that the trial court erred in holding otherwise.[32]

(21 SCt 128, 45 LEd 186) (1900) (noting that "the right of locomotion, the right to remove from one place to another according to inclination, is an attribute of personal liberty . . . to be free in the enjoyment of all his faculties; to be free to use them in lawful ways; to live and work where he will; to earn his livelihood by an lawful calling; to pursue any livelihood or avocation . . . ."); 1 W. Blackstone, *Commentaries on the Law of England* 130 (1765) (noting the right to move "to whatsoever place one's inclination may direct.").

[32] *See Ferguson*, 292 Ga. at 672-73 (2) (c) (holding that the prohibition against felon obtaining a permit to carry a firearm was a legal disability that the Board's commutation order, which removed "all disabilities" and restored "all civil and political rights lost" as a result of felon's past conviction, removed). *Cf. Gregory v. Sexual Offender Registration Review Bd.*, 298 Ga. 675, 685-86 (784 SE2d 392) (2016) (holding that the "opprobrium and reputational harm" associated with being classified as a sexually dangerous predator, as well as reporting, employment, and monitoring restrictions, rise to the level of a "liberty interest" within the meaning of the Due Process Clause of the Fourteenth Amendment to the United States Constitution); *Smith v. State*, 287 Ga. 391, 397-98 (697 SE2d 177) (2010) (noting that "[o]ther consequences that are also the result (sometimes even the automatic result) of guilty pleas can also be of enormous concern to certain defendants . . . [including, but not limited to] the impact of the criminal conviction on . . . sex offender registration . . . ."); *Taylor*, 304 Ga. App. at 883-84 (1) (holding that counsel's alleged failure to advise defendant that if he pleaded guilty to child molestation he would be required to register as a sex offender constituted deficient performance even if such registration requirements are characterized as collateral consequences rather than a

15

In addition to the erroneous reasoning posited by the trial court to support its denial of Davis's motion for a general demurrer, *i.e.*, that the registration requirement does not constitute a legal disability, the State appears to also contend[33] that the Board's pardon did not absolve Davis of the responsibility to register as a sex offender because it did not explicitly state that the requirement was being removed. But this contention lacks merit unless we construe the Board's use of the phrase "*all disabilities under Georgia law*"[34] as meaningless. We are not at liberty to do so here.[35]

_____

criminal sanction);

[33] The State suggests that because the requirement to register as a sex offender is not a legal disability, the Board, which can only remove legal disabilities and restore civil and political rights, lacked the power to absolve Davis of the duty to register and that such can only be accomplished under the procedures outlined in OCGA § 42-1-19. But given our holding that the registration requirement does, in fact, constitute a legal disability, we need not address this argument other than to note that any implication that a statutory route is the exclusive means by which a felon may be relieved of the registration requirement rests on a faulty premise. *See Ferguson*, 292 Ga. at 669-70 (2) (a) (holding that "while the General Assembly had the authority to enact OCGA § 16-11-131 (c) and (d) as additional means by which convicted felons may obtain relief from State laws prohibiting them from possessing firearms, the Constitution would not authorize the General Assembly to preclude the Board's power to grant similar relief").

[34] (Emphasis supplied). *See* The Compact Oxford English Dictionary 440 (2d ed. 1991) (defining "all" as, *inter alia*, "1. The entire or unabated amount or quantity of; the whole extent, substance or compass of; the whole . . . 2. The entire number of; the individual components of, without exception. . . ."); *see* Black's Law Dictionary 36 (7th ed. 1999) (defining "all" as "[t]he entire or unabated amount of quantity of;

16

Furthermore, given that the Board explicitly stated in its pardon that it was not restoring Davis's "right to receive, possess, or transport in commerce a firearm," if the Board had wished to except the sex-offender registration requirement from the legal disabilities it was removing, it certainly knew how to do so.[36] The State also fails to appreciate that even a "conditional pardon" is to be "construed most favorably to the grantee."[37]

---

the whole extent, substance, or compass of; the whole . . .").

[35] *See Ferguson*, 292 Ga. at 672 (2) (b) ("We are loath to read an order issued by a constitutional board to be a meaningless piece of paper.").

[36] *See generally Patterson v. State*, 299 Ga. 491, 495 (789 SE2d 175) (2016) (holding that OCGA § 16-5-20 (a) (2) does not require that a defendant intend to place a victim in reasonable apprehension of receiving a violent injury, and noting that the General Assembly certainly knew how to phrase a statute to include such a requirement as shown by its simultaneous enactment of another criminal statute, which included an intent requirement); *Fair v. State*, 284 Ga. 165, 168 (2) (b) (664 SE2d 227) (2008) (noting that if the General Assembly had intended to require knowledge of the victim's status as a peace officer in order for the aggravated circumstance under OCGA § 17-10-30 (b) (8) to apply, it knew how to do so); *Avila v. State*, 333 Ga. App. 66, 69-70 (775 SE2d 552) (2015) (noting that the General Assembly's use of the phrase "during the commission of crime" in certain subsections of a criminal statute made clear that it knew how to specify that a disqualifying event must occur while the crime was in process, and that the subsection at issue did not include such a limitation).

[37] *Muckle v. Clarke*, 191 Ga. 202, 204 (12 SE2d 339) (1940), *citing Crooks v. Sanders*, 115 SE 760, 762 (S.C. 1922) ("While the object of the courts in construing instruments of this character is to carry out the intention of the parties, wherever that

17

Additionally, the State's assertion that State Board of Pardons and Paroles Rule 475-3-.10 limits the definition of disability to include only restrictions on the rights to vote, hold public office, and serve on a jury, is without merit. Rule 475-3-.10 (6), entitled "Removal of Disabilities," merely notes that, *inter alia*, "[u]nder Georgia law a person convicted of a felony involving moral turpitude loses his civil and political rights, *including* the right to vote, the right to hold public office, and the right to serve on a jury . . . ." Suffice it to say, our Supreme Court has previously noted that such regulatory text hardly supports the State's sweeping claim that the meaning of "disability," as used by the Board in issuing its pardons, is limited solely to these three specific disabilities.[38]

is doubtful the grant is construed *for the citizen and most strongly against the sovereign power*. As a pardon is an act of grace, it is a universal rule of interpretation that limitations upon the operation of such a grant of clemency should be strictly construed.") (emphasis supplied); *accord State v. Rand*, 32 NW2d 79, 84 (Iowa 1948); *see also Biddle v. Perovich*, 274 U.S. 480, 486 (47 SCt 664, 71 LEd 1161) (1927) (Holmes, J.) ("We will not go into history, but we will say a word about the principles of pardons in the law of the United States. A pardon in our days is not a private act of grace from an individual happening to possess power. It is a part of the Constitutional scheme. When granted it is the determination of the ultimate authority that the public welfare will be better served by inflicting less than what the judgment fixed.").

[38] *See Ferguson*, 292 Ga. at 672-73 (2) (c) (holding that order by Board, which by its plain language removed "all disabilities" and restored "all civil and political rights lost" as a result of federal conviction for felony for moonshining, was not

18

Finally, the State claims that language from the Board's website and the Georgia Innocence Project's website should be considered by this Court to assist us in determining the meaning of the language contained in the pardon issued by the Board to Davis.[39] We decline to do so. Here, our concern is with the actual text used in Davis's pardon, not unattributable statements or pronouncements contained on one or more websites (even if one of those websites does belong to the Board). If legislative history is "the equivalent of entering a crowded cocktail party and looking over the heads of the guests for one's friends,"[40] then using unattributable language

limited in scope to restoration of rights to vote, to serve on jury, and to hold public office).

[39] According to the State, "at the time of [Davis's] pardon," the Board's website contained the following language: "A pardon . . . does not relieve a convicted sex offender of the requirement to register on the Sex Offender Registry." As we explain in this opinion, unattributable language on a website may not be used to inform the meaning of the language used in a pardon. But even if we were inclined to consider such extratexual materials, we would not do so here. Davis's pardon was granted on February 13, 2013, and the copy of the website page contained in the record is dated over one year later (February 23, 2014). To be sure, the copy indicated that the process outlined therein was effective as of January 1, 2013; but we have no way of knowing, without going outside of the appellate record, whether the language in question actually appeared on the Board's website at the time of the pardon. Thus, while we have no reason to doubt the sincerity of the State's averment that this was indeed the case, the appellate record contains no evidence to support it.

[40] *Conroy v. Aniskoff*, 507 U.S. 511, 519 (113 SCt 1562, 123 LE2d 229) (1993) (Scalia, J., concurring); *see also Day v. Floyd Cty. Bd. of Ed.*, 333 Ga. App. 144, 151

19

on a website to inform the meaning of a statute, regulation, or pardon is the equivalent of leaving the cocktail party altogether, driving past establishments not to your liking, and going straight to the pub "where everybody knows your name"[41] and they always tell you what you want to hear. If the former is cherry picking, then the latter is an endless orchard full of interpretive possibilities.

For all the foregoing reasons, we are constrained to reverse the trial court's denial of Davis's motion for a general demurrer.

That said, before concluding, we take this opportunity to express our sympathy with many of the concerns raised by the State and DAAG in this proceeding.[42] Like the State and DAAG, this Court is deeply troubled by the fact that neither the victim nor the District Attorney's Office were ever notified that the Board was considering

---

(775 SE2d 622) (2015) (Dillard, J., concurring fully and specially).

[41] GARY PORTNOY, *Where Everybody Knows Your Name, theme from Cheers* (Charles Burrows/Charles Productions & Paramount Network Television, 1982-93).

[42] We also agree with DAAG that the issues raised in this appeal have statewide implications and will undoubtedly be of interest to our Supreme Court in the inevitable certiorari petition that follows this decision.

20

a pardon of Davis's aggravated sodomy conviction.[43] Indeed, while the Board resisted the State's attempts at every turn to unseal Davis's pardon file, one of its members did agree to speak with the District Attorney's Office about the pardon process in general. And in doing so, this board member indicated that (1) the Board has no policy of contacting the District Attorney's Office from the convicting circuit or the victim before granting a pardon,[44] (2) no real criteria exists for granting a pardon ("It's very subjective"), and (3) *99% of all pardon requests are granted*. Suffice it to say, these averments, if true, are shocking—especially the assertion that 99% of all pardon requests are granted. To be sure, these revelations about the Board's pardon process have no bearing on this appeal. As previously noted, the separation-of-powers doctrine does not permit this Court to overturn or any way disturb the Board's pardon of Davis. We are bound by the Board's exercise of that exclusive executive power.

---

[43] As DAAG aptly notes in its *amicus curiae* brief, the Board's current process for handling pardon applications does not provide district attorneys or victims with the opportunity to be heard and express their concerns to the Board before it considers the merits of those applications.

[44] *Compare* OCGA § 42-1-19 (b) (2) (requiring petition for release from registration requirements to be "served on the district attorney of the jurisdiction where the petition is filed . . . ."); OCGA § 42-1-19 (d) (2) (noting that, in considering a petition for release from registration requirements, a court may consider "[a]ny evidence introduced by the district attorney . . . .").

Nevertheless, the General Assembly may very well wish to investigate the manner in which the Board is currently exercising its pardon power, and then take any remedial measures that it deems necessary. And while perhaps some or even all of the Board's members genuinely believed that their pardon of Davis did not relieve him of his duty to continue his registration as a sex offender, this Court is not at liberty to disregard the plain meaning of the words used by the Board in issuing that pardon or the applicable law detailed *supra*. Instead, we are duty bound to abide by the plain language used by the Board in its pardon of Davis, not the unexpressed intentions of one or more board members.

*Judgment reversed. Reese, J., concurs. Bethel, J., concurs fully and specially*.

A16A1650. DAVIS v. THE STATE.

BETHEL, Judge, concurring fully and specially.

"If you're going to be a good and faithful judge, you have to resign yourself to the fact that you're not always going to like the conclusions you reach. If you like them all the time, you're probably doing something wrong."[1] With a new appreciation for the sentiment expressed above, I concur and join fully in Presiding Judge Dillard's opinion.

---

[1] Justice Antonin Scalia in public remarks at Chapman Law School (2005).