303 Ga. 684
FINAL COPY

S17G1333. THE STATE v. DAVIS.

BOGGS, Justice.

We granted this petition for certiorari to consider two questions: First, whether this Court's constitutional question jurisdiction is invoked by the issue of the authority of the Board of Pardons and Paroles to remove the requirements imposed upon sex offenders by OCGA § 42-1-12 under its constitutional power "to remove disabilities imposed by law," Ga. Const. Art. IV, Sec. II, Par. II (a). Second, if that question is answered in the affirmative, whether the trial court erred in concluding that the registration and reporting requirements of that Code section are not a "disability" within the meaning of the Board's constitutional powers, and therefore denying Davis' general demurrer. For the reasons stated below, we answer both questions in the affirmative. We therefore must vacate the judgment of the Court of Appeals, decide the constitutional claims presented

by this petition, and reverse the trial court's judgment.[1]

In 1995, Barry Craig Davis pled guilty to aggravated sodomy against his six-year-old daughter and was sentenced to ten years with two to serve in confinement. After the enactment of OCGA § 42-1-12 in 1996, he was required to register for life as a sex offender upon his release on probation. After his release from prison, Davis' probation terminated on July 15, 2005. On February 13, 2013, Davis obtained a pardon from the Board of Pardons and Paroles ("the Board"):

> WHEREAS, an application for a Pardon has been filed by the above named individual; and
> WHEREAS, having investigated the facts material to the pardon application, which investigation has established to the satisfaction of the Board that the pardon applicant is a law-abiding citizen and is fully rehabilitated;
> THEREFORE, pursuant to Article IV, Section II, Paragraph II (a), of the Constitution of the State of Georgia, the Board, without implying innocence, hereby unconditionally fully pardons said individual, and it is hereby
> ORDERED that all disabilities under Georgia law resulting from the above stated conviction(s) and sentence(s), as well as, any other

---

[1] As this Court noted in Rodriguez v. State, 295 Ga. 362, 366 (2) n.6 (761 SE2d 19) (2014), while we could remand for the Court of Appeals to transfer this case back to this Court, "our issuance of a writ of certiorari to the Court of Appeals was sufficient to put the whole case before this Court, and a remand-with-direction-to-transfer-back is unnecessary. We will go ahead and decide the merits of the appeal, as if it had been properly transferred here in the first place."

Georgia conviction(s) and sentence(s) imposed prior thereto, be and each and all are hereby removed; and

ORDERED FURTHER that all civil and political rights, except the right to receive, possess, or transport in commerce a firearm, lost under Georgia law as a result of the above stated conviction(s) and sentence(s), as well as, any other Georgia conviction(s) and sentence(s) imposed prior thereto, be and each and all are hereby restored.[2]

Ga. Const. Art. IV, Sec. II, Par. II (a) provides:

Except as otherwise provided in this Paragraph, the State Board of Pardons and Paroles shall be vested with the power of executive clemency, including the powers to grant reprieves, pardons, and paroles; to commute penalties; to remove disabilities imposed by law; and to remit any part of a sentence for any offense against the state after conviction.

Shortly after receiving the pardon, Davis moved to North Carolina without providing notice within 72 hours to the Chatham County Sheriff as required of sex offenders by OCGA § 42-1-12 (f) (5). He was indicted for violation of that Code section by "fail[ing] to update his address, required registration information, with the Sheriff of Chatham County . . . within 72 hours prior to such change of residence . . . ." He filed a general demurrer to the indictment for failure to charge a criminal offense, contending that the requirement to register

---

[2] Significantly, the pardon contained no similar exception with respect to Davis' obligations under OCGA § 42-1-12.

as a sex offender was removed by the pardon. After a hearing, the trial court, relying on Rainer v. State, 286 Ga. 675, 675-676 (1) (690 SE2d 827) (2010), held that the requirement to register is merely regulatory rather than punitive in nature, and therefore does not constitute a legal disability. It further concluded, based upon an opinion of the Attorney General, that "legal disability" within the meaning of the pardon extends only to the right to hold office, to vote, and to serve on a jury. 1954-1956 Op. Atty. Gen. 508, 509 (Dec. 21, 1956). Accordingly, the trial court found that, in the absence of express language in the Board's decree, Davis' pardon does not release him from the obligation to register as a sex offender. It therefore denied the general demurrer.

The trial court granted a certificate of immediate review, and Davis applied for interlocutory review with the Court of Appeals, which granted the application. In Davis v. State, 340 Ga. App. 652 (798 SE2d 474) (2017), the Court of Appeals conducted a thorough analysis of the pardon powers of the Board, finding that the plain language of the Constitution, Board rules, and the pardon itself "constrained [it] to conclude" that the requirement to register as a sex offender was a legal disability which was removed by the Board's pardon. Id. at 660. It therefore reversed the trial court's denial of Davis' motion for a

4

general demurrer. Id. at 662.[3]

This Court granted certiorari on August 14, 2017, posing the following questions:

> (1) Whether this Court's constitutional question jurisdiction is invoked by the question of whether the authority of the Board of Pardons and Paroles to remove "disabilities imposed by law," Ga. Const. Art. IV, Sec. II, Par. II (a), encompasses the authority to remove requirements imposed on sex offenders under OCGA § 42-1-12; and
>
> (2) Whether the sex offender registration requirements are a legal disability [and] are removed by the Board's order granting a pardon and removing all disabilities other than to possess a firearm?

1. In its brief, the State argues that the Court of Appeals lacked jurisdiction to consider this case because it addresses a constitutional question of first impression.[4] We agree.

The exclusive appellate jurisdiction of the Supreme Court of Georgia is established by Ga. Const. Art. VI, Sec. VI, Par. II:

> The Supreme Court shall be a court of review and shall

---

[3] The Court of Appeals also noted, as the Georgia Association of Criminal Defense Lawyers pointed out in its brief amicus curiae, that Davis' pleading would more properly be styled a plea in bar, as it references matters not appearing on the face of the indictment. 340 Ga. App. at 654-655. The court observed, however, that the parties consented to the trial court's determination of the issue, and that in either case, the standard of appellate review is de novo. Id.

[4] Davis filed his application for interlocutory appeal with the Court of Appeals, and the State did not raise this issue before that court.

exercise exclusive appellate jurisdiction in the following cases:

(1) All cases involving the construction of a treaty or of the Constitution of the State of Georgia or of the United States and all cases in which the constitutionality of a law, ordinance, or constitutional provision has been drawn in question . . . .

"[W]e have interpreted this jurisdictional provision to extend only to constitutional issues that were distinctly ruled on by the trial court and that do not involve the application of unquestioned and unambiguous constitutional provisions or challenges to laws previously held to be constitutional against the same attack." (Citation omitted.) Brinkley v. State, 291 Ga. 195, 196 (728 SE2d 598) (2012), disapproved on other grounds by Veal v. State, 298 Ga. 691, 701 (5) (d) (784 SE2d 403) (2016).

The Court of Appeals has limited jurisdiction to review constitutional questions. It has jurisdiction over cases that involve the application, in a general sense, of unquestioned and unambiguous provisions of the Constitution to a given state of facts and that do not involve construction of some constitutional provision directly in question and doubtful either under its own terms or under the decisions of the Supreme Court of Georgia or the Supreme Court of the United States. The Court of Appeals has jurisdiction when the constitutionality of a state law is questioned if the law has been held to be constitutional against the same attack being made, as such a case requires merely an application of unquestioned and unambiguous constitutional provisions.

(Citations and punctuation omitted.) City of Decatur v. DeKalb County, 284 Ga.

434, 436-437 (2) (668 SE2d 247) (2008).

Davis argues, citing Ferguson v. Perry, 292 Ga. 666, 670 (740 SE2d 598) (2013), that this Court has already construed the meaning of the term "disability" with respect to the scope of the Board's powers and authority under Ga. Const. Art. IV, Sec. II, Par. II, and the Court of Appeals therefore has jurisdiction. But that is true only when the facts of the case "do not involve construction of some constitutional provision directly in question and doubtful either under its own terms or under the decisions of the Supreme Court of Georgia or the Supreme Court of the United States." (Citations and punctuation omitted.) City of Decatur, supra, 284 Ga. at 436 (2). While the principles addressed in Ferguson are clearly relevant here as discussed in Division 2, below, the construction of the constitutional provision in question with respect to sex offender registration, as opposed to firearm rights, has not been addressed; as the Court of Appeals acknowledged, this is a case of first impression. Davis, supra, 340 Ga. App. at 654 n.5. This appeal therefore does not "require[ ] merely an application of unquestioned and unambiguous constitutional provisions." (Citations and punctuation omitted.) Zarate-Martinez v. Echemendia, 299 Ga. 301, 304 (2) (788 SE2d 405) (2016).

"Because this Court has exclusive appellate jurisdiction over cases involving the construction of the state constitution, the Court of Appeals erred when it construed the constitutional provision" at issue here. City of Decatur, supra, 284 Ga. at 437 (2). The Court of Appeals lacked jurisdiction to decide this appeal, and its judgment is a nullity. See State of Ga. v. Sun States Ins. Group, 299 Ga. 489, 490 (788 SE2d 346) (2016). We therefore vacate the judgment of the Court of Appeals and undertake to decide the question that should have been presented to this Court in the first instance: whether the sex offender registration requirements are a legal disability removed by the Board's order granting a pardon and removing all disabilities and restoring all rights other than firearms rights.[5]

2. The executive clemency power of the Board is broadly stated in the relevant constitutional provision as "including the powers to grant reprieves, pardons, and paroles; to commute penalties; to remove disabilities imposed by law; and to remit any part of a sentence for any offense against the state after conviction." Ga. Const. Art. IV, Sec. II, Par. II (a). And the Board's regulations

---

[5] The Court thanks the District Attorneys' Association of Georgia for its brief amicus curiae with respect to the second question posed by the grant of certiorari.

8

provide: "A pardon is a declaration of record that a person is relieved from the legal consequences of a particular conviction. It restores civil and political rights and removes all legal disabilities resulting from the conviction." Ga. Comp. R. & Regs. r. 475-3-.10 (3).[6] Finally, Davis' pardon declares that it "unconditionally fully pardons" him, that "all disabilities under Georgia law resulting from the above stated conviction(s) and sentence(s) . . . be and each and all are hereby removed" and "that all civil and political rights, except the right to receive, possess, or transport in commerce a firearm, lost under Georgia law as a result of the above stated conviction(s) and sentence(s) . . . be and each and all are hereby restored." We therefore must consider the meaning of the relevant terms, in the context of the whole.

"Disability" has been defined as "an incapacity created by the law," Ferguson, supra, 292 Ga. at 673 (2) (c) (quoting The New Shorter Oxford English Dictionary 682 (1993)), and as an "'incapacity in the eye of the law, or

---

[6] At the time of Davis' pardon, a former version of this regulation was in effect. While the language quoted here did not change, the current regulation requires that an applicant convicted of a sex offense and required to register on the sex offender registry must be free of supervision and criminal involvement for ten years after completion of the full sentence obligation before a pardon may be granted. Ga. Comp. R. & Regs. r. 475-3-.10 (3) (b). But it notes no further restrictions with respect to removal from the sex offender registry.

9

created by law; a restriction framed to prevent any person or class of persons from sharing in duties or privileges which would otherwise be open to them; legal disqualification.'" Davis, supra, 340 Ga. App. at 658 (quoting The Compact Oxford English Dictionary 440 (2d ed. 1991)).[7] The State acknowledges that no "exhaustive list" of disabilities under state and federal law exists. And while it asserts that other legal consequences, such as the suspension of a driver's license as the result of certain violations of the traffic laws, "have not been held to be legal disabilities," it cites no authority for that statement, and it is equally true that no decision has held that they are not legal disabilities, certainly not in the context of the pardon power of the Board.[8]

Here, the provisions of OCGA § 42-1-12 require that convicted sex

---

[7] While we must vacate the opinion of the Court of Appeals for lack of jurisdiction, that does not affect the authorities cited by that court or the persuasiveness of its legal reasoning.

[8] The cases cited by the State likewise do not address the status of a pardon in effect at the time relevant to our analysis. See, e.g., Hulgan v. Thornton, 205 Ga. 753 (55 SE2d 115) (1949) (subsequent pardon does not affect disqualification from holding public office at earlier time); see also United States v. Roberson, 752 F3d 517, 524 (II) (1st Cir. 2014). Lee v. Byrd, 169 Ga. 622 (151 SE 28) (1929) cited by the State, refers to various requirements for a candidate for public office as "disabilities." Id. at 625 (d). And Roberson, cited by the State for its reference to the federal sex offender registry as a "civil regulatory measure," makes that statement in the context of the constitutional implications of a "civil disability." Id. But Roberson considers only whether a subsequently vacated conviction may constitute a "predicate offense" when it was still in effect at the time the defendant violated the federal act, and is therefore not relevant to our analysis here.

offenders falling within its purview provide a substantial amount of personal information, including name, social security number, age, detailed physical description, fingerprints, photograph, date and place of employment, and vehicle identification, to the sheriff of the county of his residence. OCGA § 42-1-12 (a) (16); (f) (2). After initially registering in person, the offender must renew registration in person once a year, OCGA § 42-1-12 (f) (4), and update the sheriff within 72 hours of any change to the required information. OCGA § 42-1-12 (f) (5). These requirements must be complied with until death, except for periods of subsequent incarceration. OCGA § 42-1-12 (f) (6). This information is maintained and made accessible to the public by the Georgia Bureau of Investigation and the relevant county sheriff, OCGA § 42-1-12 (h), (i), and submitted to "each school in this state." OCGA § 42-1-12 (l). And violation of the requirements of this Code section constitutes a felony punishable by up to 30 years imprisonment. OCGA § 42-1-12 (n) (1).[9]

These reporting requirements also negatively affect rights such as "[t]he right of personal liberty[.]" OCGA § 1-2-6 (a) (2). "This personal liberty

---

[9] We do not consider other and more stringent requirements of this chapter, which apply by their terms only to offenses committed or persons incarcerated as of a later date and are not applicable to Davis. See OCGA § 42-1-13 et seq.

consists in the power of loco-motion, of changing situation, or removing one's person to whatsoever place one's own inclination may direct." 1 W. Blackstone, Commentaries on the Law of England 130 (1765). And "[t]he right to travel is a part of the 'liberty' of which the citizen cannot be deprived without due process of law under the Fifth Amendment." Kent v. Dulles, 357 U. S. 116, 125 (78 SCt 1113, 2 LE2d 1204) (1958) (issuance of United States passport). "Indeed, the ability of an American citizen to live freely without reporting to the government his or her every movement is a defining characteristic of our constitutional republic." Davis, supra, 340 Ga. App. at 659 (citing Blackstone and Kent).

Finally, as the Board's regulations provide, the subjection of an offender to the requirements of OCGA § 42-1-12 is "imposed by law" and constitutes "legal consequences of a . . . conviction." Our Court of Appeals has noted, quoting Padilla v. Kentucky, 559 U. S. 356, 365-366 (II) (130 SCt 1473, 176 LE2d 284) (2010):

> [L]ike deportation, registration as a sex offender is intimately related to the criminal process in that it is an automatic result following certain criminal convictions. OCGA § 42-1-12 (e) provides that registration shall be required by any individual who is convicted of certain designated criminal offenses, and we have

12

emphasized that Georgia law makes registration mandatory for specified categories of convicted criminals. Hence, our law has enmeshed criminal convictions and sex offender registration such that it is most difficult to divorce the requirement of registration from the underlying criminal conviction.

(Citations, punctuation, footnote and emphasis omitted.)  Taylor v. State, 304 Ga. App. 878, 883-884 (1) (698 SE2d 384) (2010).[10] In contrast to the regulatory and licensing provisions cited by the State, such as those required to obtain a driver's license, voter registration, or passport, sex offender registration is both involuntary and an automatic consequence of certain criminal convictions.

We note that the trial court's reliance on Rainer, supra, to conclude that inclusion in the sex offender registry is not a "disability," is misplaced. Rainer only considered whether such inclusion was violative of due process or Eighth Amendment guarantees against cruel and unusual punishment. 286 Ga. at 675. The same is true of decisions cited by the State addressing whether inclusion in

_____

[10] In Taylor, the Court of Appeals held that failure to advise a client that a particular guilty plea will require him to register as a sex offender under OCGA § 42-1-12 is constitutionally insufficient performance, 304 Ga. App. at 884 (1). This Court has not addressed this issue, however, and we express no opinion regarding it here. But, as Taylor explains, registration as a sex offender is unquestionably a clear legal consequence of the underlying conviction.

13

a sex offender registry is unconstitutional as violating the registrant's due process rights, right to travel, or the ex post facto clause. See, e.g., id.; Smith v. Doe, 538 U. S. 84, 99 (II) (B) (123 SCt 1140, 155 LE2d 164) (2003); United States v. Ambert, 561 F3d 1202 (11th Cir. 2009). These decisions are not dispositive of whether inclusion in the registry is a "legal consequence" — a "disability" or an effect on a "civil and political right" — that may be restored by a pardon. And, similarly, whether deprivation of a right amounts to an independent constitutional violation does not foreclose its status as a right restorable by pardon.

The State's assertion that the rights restored by pardon are limited to the right to vote, to hold public office, and to serve on a jury, citing a 60-year-old opinion of the Attorney General and several inconclusive constitutional and statutory provisions, was rejected by our decision in Ferguson, supra, 292 Ga. at 672 (2) (c). And the State's argument that the pardon is not unconditional because the Board did not restore Davis' firearm rights, and therefore did not intend to remove the requirement to register as a sex offender, is likewise foreclosed by Ferguson:

> We are loath to read an order issued by a constitutional board

14

to be a meaningless piece of paper. These words cannot be meaningless, else they would not have been used. It is more natural and reasonable to read the Board's . . . order as removing "all disabilities resulting from" and "all civil and political rights lost as a result of" [appellant's] felony conviction [except his firearm rights].

(Citations and punctuation omitted.) 292 Ga. at 672 (2) (b). And this reading of the Board's order is consistent with the venerable maxims expressio unius est exclusio alterius (expression of one thing implies exclusion of another) and expressum facit cessare tacitum (if some things are expressly mentioned, the inference is stronger that those not mentioned were intended to be excluded). See Turner v. Ga. River Network, 297 Ga. 306, 308 (773 SE2d 706) (2015) (statute); Goddard v. City of Albany, 285 Ga. 882, 884 (1) (684 SE2d 635) (2009) (city charter and ordinance); see also Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 107-108 (2012) (general textual application). Having expressly mentioned its intention *not* to restore Davis' firearm rights, it is presumed that the Board's intention was to restore "all civil and political rights" and remove "all disabilities under Georgia law" not mentioned.

And, as we noted in Ferguson, supra, the Board is well aware of the means

15

of excepting a legal consequence from a pardon: in some pardons more recently issued than that given to the appellee in Ferguson, including the pardon at issue here, the Board has expressly excluded the restoration of firearm rights from the terms of the pardon. 292 Ga. at 673-674 (2) (c). Had the Board meant to exclude the provisions of OCGA § 42-1-12 from the terms of the pardon, "it presumably would have said so. [Cit.]" Dubois v. Brantley, 297 Ga. 575, 585 (2) (775 SE2d 512) (2015).

We therefore hold that inclusion on the sex offender registry pursuant to OCGA § 42-1-12 is a legal consequence of the underlying criminal offense and a disability imposed by law; that Davis' pardon by its express terms removed all disabilities under Georgia law resulting from his conviction and relieved all the legal consequences thereof; and that it restored all of his civil and political rights, excepting only his firearm rights. The judgment of the trial court therefore must be reversed.[11]

---

[11] We agree with Davis that the scope of what constitutes a "disability" cannot be limited by unattributed statements on the Board's website or the State's accounts of personal conversations with Board members. Moreover, we agree with the Court of Appeals that "our review in this matter does not — and cannot — concern the propriety of the pardon the Board granted Davis but rather only the scope of that pardon." Davis, supra, 340 Ga. App. at 657. Ga. Const. Art. I, Sec. II, Par. III provides: "The legislative, judicial, and executive powers shall forever remain separate and distinct; and no person discharging the duties of one shall at the same time exercise the functions of either of the others except as herein provided."

Judgment of the Court of Appeals vacated and judgment of the trial court reversed. Hines, C. J., Melton, P. J., Benham, Hunstein, Nahmias, Blackwell, JJ., Judge Suzanne Hayes Smith, and Judge R. Chris Phelps concur. Peterson and Grant, JJ., disqualified.

---

And the General Assembly has declared that "the duties, powers, and functions of the State Board of Pardons and Paroles are executive in character and that, in the performance of its duties under this chapter, no other body is authorized to usurp or substitute its functions for the functions imposed by this chapter upon the board." OCGA § 42-9-1. The State's efforts to inject the circumstances of the pardon itself into this appeal therefore are without merit.

17

Decided May 21, 2018.

Certiorari to the Court of Appeals of Georgia — 340 Ga. App. 652.

Meg E. Heap, District Attorney, Lyndsey H. Rudder, Christine S. Barker, Assistant District Attorneys, for appellant.

Amy L. Ihrig, Robert L. Persse, for appellee.

Scott L. Ballard; Robert W. Smith, Jr., James C. Bonner, Jr., Brandon A. Bullard; Law Firm of Shein & Brandenburg, Elizabeth A. Brandenburg; Peters, Rubin & Sheffield, Robert G. Rubin, amici curiae.